Ronnie **LARSON**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. 2852.

Supreme Court of Alaska.

July 22, 1977.

---

Bruce A. Bookman, Anchorage, for appellant.

Avrum M. Gross, Atty. Gen., Juneau, Joseph D. Balfe, Dist. Atty. and Glen C. Anderson, Asst. Dist. Atty., Anchorage, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR and BURKE, Justices, and DIMOND, Justice Pro Tem.

## OPINION

DIMOND, Justice Pro Tem.

This appeal results from the trial court's consolidation of appellant Ronnie Larson's trial with the trial of his brother Dan Larson.

On June 8, 1975, an automobile driven by Dan Larson and containing an unidentified female passenger and Dan's brother, Ronnie Larson, entered Topper's Tesoro Gas Station on Fifth Avenue in Anchorage, Alaska. Dan Larson ordered one gallon of gasoline. William Barnes, the station attendant, pumped the gallon of gasoline while attendant John Gelatko washed the windows of the vehicle.

The driver of the car, Dan Larson, accused Barnes of having pumped 65 cents worth of gasoline when the price of gasoline was listed as 63.9 cents. Dan Larson was given change for the dollar, which he dropped. Upon being unable to find a portion of the change, he accused the station employees of shortchanging him. The manager of the gas station then asked the Larson brothers to leave the station.

Instead of leaving the station, they drove around to the other side of a different gas pump island. Dan Larson got out of the car with a Doberman pinscher and said something to the effect that he was going to let the dog loose to attack William Barnes. Ronnie Larson got out of the car with a battery jumper cable and began swinging it over his head. Dan Larson, after encouraging the dog to attack Barnes, released the dog from its leash, but Barnes sprayed the dog with gasoline and the dog retreated.

Meanwhile, Ronnie Larson was swinging the heavy battery cable over his head and advancing upon John Gelatko. He nearly hit Gelatko in the head with the cable, but Gelatko ducked and the battery cable passed over his head. Gelatko threw a squeegee at Ronnie Larson's feet and, when Larson jumped, Gelatko grabbed him in a headlock and hit him about the face and shoulders. The Larsons then got back in the car and left the gas station.

Several minutes later, Barnes, while waiting on another customer, turned and saw the Larson vehicle eastbound in the far lane of Fifth Avenue with Dan Larson driving the vehicle and pointing a pistol out the window. However, no shot was fired at that time. Barnes went to call the police, asking them to hurry. The Larson vehicle again passed by in the right-hand lane. A shot was then fired at the gas station by Dan Larson, and the bullet struck the water bucket at the gas pump island. At the time of the shot, Ronnie Larson and the female passenger were in the back seat. The Larson vehicle then accelerated and left the area.

A police vehicle responding to the telephone call pursued the Larsons' vehicle eastbound of Fifth Avenue with red lights and siren operating. A chase ensued. The Larsons' vehicle was eventually discovered and the Larson brothers apprehended. At

that time the police recovered a gun and holster from the vehicle with "fresh" blood on the holster. The blood was from a nosebleed sustained by Ronnie Larson in the gas station foray.

The Larson brothers were both separately indicted for assault with a dangerous weapon. Ronnie Larson, for the incident involving the battery jumper cable, and his brother Dan Larson, for the dog and gun incident. Prior to trial the indictment count involving the dog was dismissed.

Over Ronnie's objection the trial of the two brothers was consolidated by the trial court. Prior to trial, counsel for Ronnie moved for a separate trial on his charge. It was his contention that evidence pertaining to the charge against Dan Larson involving the gun, which would be inadmissible in a separate trial of Ronnie Larson, would prejudicially associate Ronnie Larson with the more serious crime of Dan Larson. Following a trial by jury both Larson brothers were convicted.

Ronnie Larson's first point on appeal is that it was error for the trial court to consolidate the trials of the two brothers. The consolidation of criminal trials is controlled by Alaska Rules of Criminal Procedure 13 and 8(b). They provide as follows:

Rule 13.

The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants, if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information.

Rule 8(b).

*Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information *if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.* Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count. The disposition of the indictment or information as to one of several defendants joined in the same indictment or information shall not affect the right of the state to proceed against the other defendants. (emphasis added)

In applying Criminal Rule 8(b) it must be determined whether the two defendants involved here both participated "in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." It is Ronnie Larson's contention that joinder was improper under Criminal Rule 8(b), because the conduct of the two defendants did not arise from a single transaction or series of transactions.

Criminal Rule 8(b) is patterned after its federal criminal rule counterpart. With regard to the federal rule [1] there is merit in the approach employed by the court in *United States v. Laca,* 499 F.2d 922 (5th Cir. 1974) in defining this language. There the court stated:

Thus if the defendants' acts are a part of a series of transactions, it is not necessary under Rule 8(b) that all the defendants be charged in the same count or that the evidence show that each defendant participated in precisely the same act. *See Kivette v. United States,* 230 F.2d 749, 753 (5th Cir. 1956). It must only be shown that each act or transaction was part of "a series of acts or transactions" and that each defendant participated in the series of transactions. Here, the requisite close connection clearly existed between the acts to constitute a "series of acts or transactions," as the violations occurred at the same time, place and occasion. Therefore, since the gun violations and the drug charges were in "a series of acts or transactions" in which series all three defendants participated, Rule 8(b) permits joinder of the defendants in one indictment.[2]

1. Alaska Criminal Rule 8 is identical to Federal Rule of Criminal Procedure 8.

2. 499 F.2d at 925 (footnote omitted).

In this case the conduct of both of the Larson brothers took place within a relatively brief period of several minutes.[3] There was obviously such a close connection between the acts of Ronnie Larson and Dan Larson that it would be entirely fair to hold their actions constituted "the same series of acts of transactions," occurring at the same time, place and occasion. The criteria of Rule 8(b) were satisfied, and the trial of the two indictments together, as provided by Criminal Rule 13, was not error.

■ Ronnie Larson's second point on appeal involves Criminal Rule 14, which provides:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the state to deliver to the court for inspection in camera any statements or confessions made by the defendants which the state intends to introduce at the trial.

He contends that the trial court erred when it refused to sever the trial of his case from that of his brother.

Ronnie argues that the introduction of all evidence concerning events which took place after his assault with the battery cable at the gas station improperly prejudiced his case. He points out that if he were tried alone, this evidence would not have been admissible for lack of relevancy. But since it was relevant to Dan Larson's offense, Ronnie argues the jury was exposed to evidence which tended to improperly associate him with the offense committed by his brother. Thus, by the introduction of this evidence, Ronnie contends that

the nature of the charge arising from the gas station foray was made more serious by virtue of being associated with the later shooting incident including his brother. Ronnie argues further that the introduction of evidence of his blood on the gun holster involved in the later shooting tended to link him, in the minds of the jurors, to a crime for which he was not charged.

On these facts there was the possibility of prejudice. But, this did not escape the attention of the trial court. The judge took appropriate remedial steps to alleviate the possible prejudicial impact of the evidence relating to the case of Ronnie's brother, Dan Larson.

After evidence of the shooting was admitted, the court instructed the jury it was not to be considered as evidence against Ronnie Larson. After physical evidence relevant to Dan Larson's charge was admitted, the court admonished the jury again as to its limited use only against Dan Larson. At the time of jury instructions, seven different instructions were given which drew the distinction between the two defendants and the crimes for which they were charged. Of the cautionary instructions, number 11 is most explicit. It states:

> Consider only the offense charged:
> Defendant Ronnie G. Larson is charged only with Assault With a Dangerous Weapon, to-wit: battery jumper cables. He is not charged with any other crime, nor is he on trial for any other act or conduct not alleged in the indictment against him.

Courts have long recognized that cautionary instructions do allow juries to separate evidence relating to different charges respecting different defendants.[4] Here, while there was possible prejudice, the jury instructions were adequate to cure any improper inferences the jury might have drawn. The validity of curative jury instructions is a question which requires close

---

3. Reasonably close proximity in time will suffice for the purposes of Criminal Rule 8(b). See *Scheve v. United States*, 87 U.S.App.D.C. 289, 184 F.2d 695 (1950) where the court found that several hours difference between the commission of two crimes was permissible.

4. *United States v. Hamilton*, 492 F.2d 1110, 1113 (5th Cir. 1974); *United States v. Crowder*, 464 F.2d 1284, 1285 (9th Cir. 1972); *United States v. Ayres*, 434 F.2d 60 (5th Cir. 1970).

examination of the facts of the individual case, and here that examination demonstrates their adequacy in protecting defendant Ronnie Larson's rights to a fair, impartial trial.

The judgment of conviction is affirmed. AFFIRMED.